UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN DOE, | ) ) | CASE NO. 3:20-cv-00379 JWD-SDJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF'S MOTION FOR A** |
| | ) | **TEMPORARY RESTRAINING ORDER** |
| LOUISIANA STATE UNIVERSITY, *et al.*, | ) | **AND PRELIMINARY INJUNCTION** |
| | ) | |
| Defendants. | ) | |

Pursuant to Fed. R. Civ. P. 65, Plaintiff John Doe ("John") respectfully requests that this Honorable Court issue a temporary restraining order and preliminary injunction ordering Defendant Thomas C. Galligan, Jr., in his official capacity as Interim President of Louisiana State University to stay John's one-year suspension from Louisiana State University ("LSU") pending a University Hearing Panel to hear John's case in defense of the false sexual misconduct claim against him.

Following student Jane Roe's ("Jane") false report of sexual misconduct, LSU initiated an investigation which denied John the right to participate at nearly every turn and instead served as a superficial process that merely confirmed LSU's determination from the outset that John was likely responsible. Jane's report was accepted without question, her credibility was not challenged, and LSU went out of its way to ensure that Jane and her parents understood the process.

In contrast, throughout the process, John never had an opportunity to make arguments to a panel of decision-makers, participate in a hearing, prepare for and present a case, confront and cross-examine witnesses, or procure expert testimony. LSU denied John even the bare minimum

{K0794700.1}

procedures outlined in its policy, depriving him of a hearing or the ability to review evidence until after he was adjudged responsible.

LSU's actions, as overseen by Mr. Galligan, resulted in John's suspension from LSU for at least one year, subsequently leading to John's removal from the LSU football team and loss of his full academic scholarship. LSU's actions, as overseen by Defendant, violated Title IX of the Education Amendments Act of 1972 ("Title IX"), violated John's right to due process under the Fourteenth Amendment, and breached its contractual and good faith obligations.

Without injunctive relief, John will suffer irreparable harm to his reputation and his educational and economic prospects. He therefore respectfully asks this Court to grant this Motion and order LSU to vacate its suspension pending the outcome of the University Panel Hearing to which John is entitled.

## I.    FACTUAL BACKGROUND

John incorporates the facts as detailed in his Verified Complaint. In summary, John is a talented football player, recruited to play for LSU. LSU informed John on February 4, 2020 that it was investigating an allegation that John had engaged in non-consensual sexual intercourse. LSU's notice failed to identify the complainant, failed to specify where the incident allegedly occurred, and failed to provide any details describing his alleged actions. After baselessly concluding that it was more likely than not that John had violated LSU's sexual misconduct policies, LSU placed the burden on John to request the formal resolution process, in violation of LSU policy.

Despite assurances in LSU's Permanent Memorandum 73 Title IX and Sexual Misconduct Policy ("PM-73") that John would be notified in writing as to the date, time, and location of the formal resolution process, John received no such notice. Instead, LSU only notified John *after* the

formal resolution process had taken place and determined that, by a preponderance of the evidence standard, John had likely violated LSU's sexual misconduct policy.

Following the formal resolution process, John's case was referred to Student Advocacy and Accountability. On April 17, 2020, John was invited to attend an "Accountability Meeting." LSU policy states that Accountability Meetings are informal administrative meetings were the charged student is asked to share information about the incident and the presiding official will then make a determination as to whether the student is responsible for violating PM-73. Instead, John attended the Accountability Meeting where the only questions asked of him were about his character. On May 1, 2020, an outcome letter was issued, purporting to find John responsible and suspending him from LSU for at least one year.

John had three days from his receipt of the outcome letter to decline the outcome and request a University Hearing Panel ("UHP"). However, given the whirlwind of activity resulting from end-of-semester exams and dealing with his removal from the football team, John did not understand the significance of the letter until May 8, 2020. From there, John timely accepted LSU's offer to hold a UHP. LSU acknowledged John's UHP acceptance on May 12, 2020, thereby staying John's sanction and even permitting John to enroll in an intersession course. *See* Letter Accepting UHP Request, attached as Exhibit 1. Suddenly, on June 4, 2020, John was notified that LSU was rescinding its offer to hold a UHP and the sanction was reinstated. *See* Letter Revoking UHP, attached as Exhibit 2. LSU has consistently blamed John for his failure to understand its incomprehensible policies, all the while it has been in contact with Jane Roe and her family, not once but twice, to specifically explain the process to them.

LSU's actions blatantly discriminated against John on the basis of sex and violated John's due process rights. John was denied the right to review the evidence against him during the

investigation until after his responsibility for the alleged violation had already been determined. John was denied the right to a hearing. John was further denied to right to cross-examine any witnesses against him. Jane received preferential treatment and had the process explained to her multiple times, a right denied to John on the basis of his sex. The unfair and rushed process resulted in John's suspension from LSU for at least one year, which subsequently led to his removal from the LSU football team and loss of his full athletic scholarship. Defendant's continuing actions against John have caused substantial, immediate, and continuing damages.

## II.    LAW AND ARGUMENT

The standards for granting a temporary restraining order and for a preliminary injunction are identical. *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 144 F. Supp. 3d 604, Fn. 28 (M.D. La. Oct. 29, 2015). As shown below and in his Verified Complaint, John can satisfy each of the required elements.

To obtain a temporary restraining order or preliminary injunction pursuant to Fed. R. Civ. P. 65, which serves to preserve the *status quo* pending a final trial on the merits, a movant must establish the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). These four factors do not have a fixed value, and courts should instead apply a "sliding scale" approach, "which takes into account the intensity of each in a given calculus." *Texas v. Seatrain International, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975). This analysis "often requires [a] delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury." *Kliebert* at 635.

A.      **John Has A Strong Likelihood Of Success On The Merits.**

John has an extremely high likelihood of success on the merits of his claims for relief.

*First*, John is very likely to prevail on his Title IX claim. Title IX provides that "No person…shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  Among others, two theories have emerged through which Title IX liability may be established when gender is a motivating factor in a university's decision: erroneous outcome and selective enforcement. *Doe v. Univ. of Miss.*, 361 F. Supp. 3d 597, 606-7 (S.D. Miss. Jan. 16, 2019). To prevail on an erroneous outcome claim, a plaintiff must show that "the outcome of [the] University's disciplinary proceeding was erroneous because of sex bias." *Doe v. Cummins*, 662 Fed. Appx. 437, 452 (6th Cir. 2016). To prevail on a selective enforcement claim, "the plaintiff must show that a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *Id.*

Recently, courts have noted just how crucial the ability to cross-examine witnesses is in a university disciplinary setting. The failure to offer a right of cross-examination is considered particularly egregious when credibility is the central issue. "[A] case that 'resolve[s] itself into a problem of credibility' cannot itself be resolved without a mutual test of credibility, at least not where the stakes are this high…. One-sided determinations are not known for their accuracy. Jane Roe deserves a reliable, accurate outcome as much as John Doe." *Doe v. Univ. of Cincinnati*, 872 F. 3d 393, 404 (6th Cir. 2017). As one court put it:

> [I]f a university's procedures are insufficient to make 'issues of credibility and truthfulness ... clear to the decision makers,' that institution risks removing the wrong students …. Cross-examination, 'the principal means by which the believability of a witness and the truth of his testimony are tested,' can reduce the likelihood of a mistaken exclusion and help defendants better

identify those who pose a risk of harm to their fellow students. *Id.* at 403

Here, Jane received vastly preferential treatment throughout the process. She had the process specifically explained to her and even her parents, while John's numerous attempts to contact the LSU officials involved went ignored. Without allowing John to confirm the accuracy of the evidence against him, or indeed even allowing him to review it, LSU baselessly claimed that John had likely violated the university's policy. LSU determined John's guilt notwithstanding the inconsistencies in his and Jane's story, instead giving deference to and bestowing heightened credibility upon Jane. Moreover, not only was John denied the right to cross-examine witnesses against him, even though his case essentially boiled down to a credibility issue, but John was denied the right to any hearing. LSU treated John differently because of his sex, and John, therefore, is likely to succeed on his Title IX claim.

*Second*, John is highly likely to succeed on his § 1983 claim. Mr. Galligan, on behalf of LSU,[1] violated John's procedural due process rights as guaranteed by the Fourteenth Amendment. Procedural due process "imposes constrains on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). "[D]ue process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct." *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961).

---

[1] In anticipation of and in rebuttal to Defendants' expected defense that they are entitled to Eleventh Amendment Immunity, John states as follows: LSU is not entitled to immunity because such immunity was waived when LSU accepted federal funds. Further, the *Ex parte Young* doctrine, established in 209 U.S. 123 (1908), "created an exception to Eleventh Amendment immunity for claims for prospective relief against state officials who have been sued in their official capacities." *Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 320 (5th Cir. 2008). To face liability under the doctrine, the state official must have "some connection" to the requested relief (*Morris v. Livingston*, F.3d 740, 746 (5th Cir. 2014) and be in a position to provide the requested relief (*Fairley v. Stalder*, 294 F. App'x 805, 812 (5th Cir. 2008). Moreover, the *Ex parte Young* doctrine is no bar to a claim for injunctive relief. *See Johnson v. Louisiana*, No. 01-2002, 2002 U.S. Dist. LEXIS 1284 at *24 (E.D. La. Jan. 18, 2002). As LSU Interim President, Mr. Galligan is unquestionably in a position to stay John's one-year suspension.

Though a university is not a court of law, it must still employ "fundamentally fair procedures to determine whether [] misconduct has occurred." *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017). Thus "the amount of due process due in university disciplinary proceedings is based on a sliding scale that considers three factors: (a) the student's interests that will be affected; (b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (c) the university's interests, including the burden that additional procedures would entail." *Id.*, *citing Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

In failing to inform John of time, date, and location of the formal resolution process and denying him the ability to attend, then agreeing to have his case heard by a UHP before unilaterally and arbitrarily reinstating John's sanction, John was denied due process. John was denied sufficient notice and repeatedly denied the opportunity to be heard. Applying the *Plummer* and *Matthews* factors, John unquestionably has an interest in having his case heard by a UHP so that he may properly defend himself, clear his name, and regain his place on the football team and athletic scholarship. This case would not involve "additional or substitute procedural safeguards," as John is only seeking what is promised to him under LSU policy. John risks being erroneously deprived of his interests if injunctive relief is not granted. Moreover, there is no great burden on Mr. Galligan or LSU – Mr. Galligan will only be required to order that LSU follow its established procedures. John is likely to succeed on his § 1983 claim and this factor weighs in favor of injunctive relief.

*Third*, John is likely to succeed on his breach of contract claim. To prove a breach of contract, a plaintiff must prove that: (1) the parties consented to be bound through offer and acceptance; (2) the obligor failed to perform a conventional obligation; and (3) the obligee incurred damages. *Grant v. Houser*, No. 10-805, 2010 U.S. Dist. LEXIS 92801 at *8 (E.D. La. Aug. 17,

2010). Implicit in every contract is an implied covenant of good faith and fair dealing. *See Spillway Invs. LLC v. Pilot Travel Ctrs. LLC*, No. 04-2451, 2005 U.S. Dist. LEXIS 3321 at 22-23 (E.D. La. 2005).

LSU waived any Eleventh Amendment immunity to which it may be entitled because its contractual obligation is directly traceable to its receipt of federal funds: LSU holds UHPs to meet its obligations under Title IX. Here, LSU made John an offer to hold a UHP. John accepted LSU's offer on May 12, 2020, and LSU acknowledged John's acceptance and agreed to hold a UHP. *See* Exhibit 1. LSU then impermissibly refused to hold a UHP, claiming almost a month later than John's acceptance was untimely and violating the implied covenant of good faith and fair dealing. *See* Exhibit 2. John directly suffered damages from LSU's breach because his sanction was reinstated. John can satisfy all the elements and is likely to succeed on this claim.

**B.    John Will Suffer Irreparable Harm Absent Injunctive Relief.**

"In order for a harm to be considered irreparable for purposes of issuing a preliminary injunction, monetary damages must be inadequate to redress it." *Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 534 (W.D. La. 2016). Moreover, "[c]ourts have consistently held that, given the fleeting nature of college athletics, [a] plaintiff[] will suffer irreparable harm by losing the opportunity to participate in their sport of choice on a continuous and uninterrupted basis." *Mayerova v. E. Mich. Univ.*, 346 F. Supp. 3d 983, 997 (E.D. Mich. Sept. 27, 2018); *Biediger v. Quinnipiac Univ.*, 616 F. Supp. 2d 277, 291 (D.C. Conn. May 22, 2009) (finding that because elite collegiate athletes only have a limited span of competitiveness, losing a year of competition would irreparably inhibit their development as athletes); *Ganden v. NCAA*, 1996 U.S. Dist. LEXIS 17368 at *18 (N.D. Ill. Nov. 19, 1996) (finding that the loss of a year of competition and inability to

develop as an athlete amounts to loss that is "difficult to imagine how a court could quantify [] in financial terms").

John is a talented football player who earned a full athletic scholarship to LSU. Defendant's allowing LSU to evade its constitutional due process rights and contractual obligations under PM-73 to grant John a hearing has subsequently led to John losing his place on the football team and loss of his athletic scholarship. John's promising future of playing professional football essentially evaporated overnight when LSU offered to hold a UHP, John accepted, and then LSU suddenly and unilaterally rescinded its offer, even though it was no longer able to do so.

LSU football practice began Monday, June 15, 2020. If John is prevented from reassuming his place on the team and attending practice, he will undoubtedly suffer irreparable harm as he is preventing from playing the sport of his choice on a continuous and uninterrupted basis, an incalculable loss that a court cannot quantify in financial terms. This factor weighs decidedly in favor of John.

### C.      The Balance of the Hardships Favors John.

The balance of hardships dramatically favors John. Absent his Motion for TRO being granted, John will suffer immediate, irreparable harm. He will lose the ability to play collegiate football in the upcoming school year, which will undermine any hope of eventually playing professionally. His future career trajectory will be forever altered.

If John's Motion for TRO is granted, Defendant and LSU will feel very little effect, if any. As of just two weeks ago, LSU considered John's sanction to be lifted pending a UHP to dispute the school's findings. If John is granted the requested relief, Defendant will only be obligated to direct LSU to enforce its original promise to lift John's sanction and grant him a UHP. This factor weighs heavily in John's favor.

**D.**      **The Public Interest Is Best Served By Granting Injunctive Relief.**

Finally, without question the public has an interest in ensuring that educational institutions follow proper procedure. The public interest is further served "by vindicating a legal interest that Congress has determined to be an important one." *Cohen v. Brown Univ.*, 809 F. Supp. 978, 1001 (D.C. R.I. Dec. 22, 1992); *see also Favia v. Indiana Univ. of Pa.*, 812 F. Supp. 578, 585 (W.D. Pa. Nov. 2, 1992) ("The public has a strong interest in the prevention of any violation of constitutional rights."). Granting the relief requested in this case will ensure John receives his due process rights promised to him under the Constitution and under PM-73.  As a result, the public interest is best served by granting injunctive relief in this case.

**III.      CONCLUSION**

John is at risk of irreparable harm and has met the criteria for injunctive relief. For all of the reasons listed above, he respectfully asks this Court to grant this Motion for TRO ordering Defendant to lift John's sanction pending a UHP as originally promised by LSU.

As required by Local Civil Rule 65, attached is a certification by the undersigned confirming the actual notice of the time this Motion will be filed and that copies of all pleadings filed to date with this Court have been provided to Defendant.

Respectfully Submitted,

*/s/ John S. McLindon*
**John S. McLindon (La Bar Roll No. 19703)**
**Brant M. Mayer    (La Bar Roll No. 36569)**
12345 Perkins Road, Building 2-Suite 202
Baton Rouge, LA 70810
P: (225) 408-0362
F: (877) 241-2631
E: mclindon@lawbr.net; mayer@lawbr.net

**Susan C. Stone*  (Ohio Atty R. No. 0064445)**
**Kristina W. Supler* (Ohio Atty R. No. 0080609)**
KOHRMAN JACKSON & KRANTZ, LLP
1375 E. 9th Street, 29th Floor

Cleveland, OH 44114
P: (216) 696-8700
F: (216) 621-6536
E: scs@kjk.com; kws@kjk.com

*Motion to Admit Pro Hac Vice pending*
*Counsel for Plaintiff John Doe*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction has been filed electronically on this 18th day of June, 2020.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties not receiving service through the Court's electronic filing system will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

/s/ John S. McLindon
John S. McLindon