UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN DOE | : |
| | : |
| VERSUS | : NO. 3:20-CV-00379 BAJ-SDJ |
| | : |
| LOUISIANA STATE UNIVERSITY, *et al.* | : |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

Defendants, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU"), improperly sued as Louisiana State University, and Thomas C. Galligan, Jr., in his official capacity as Interim President of Louisiana State University ("Interim President Galligan"), submit this Memorandum in Opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction. (R. Doc. 3).

Plaintiff's Motion requests that, pursuant to Rule 65 of the Federal Rules of Civil Procedure, this Court "issue a temporary restraining order and preliminary injunction ordering Defendant Thomas C. Galligan, Jr., in his official capacity as Interim President of Louisiana State University to stay [Plaintiff's] one-year suspension from Louisiana State University ("LSU") pending a University Hearing Panel." Plaintiff's request should be denied as a matter of law for the following reasons.

**I.    FACTUAL BACKGROUND**

Plaintiff's Motion, including incorporated allegations from the Verified Complaint, omits critical facts regarding his meetings, communications and discussions with university personnel, both with regard to LSU's Title IX investigation, his participation in the student discipline process, and his previous disciplinary issues at LSU. In fact, Plaintiff has previously been charged with

2360283v.1

- 2 -

and been found responsible for violations of the LSU Code of Student Conduct. Plaintiff was placed on disciplinary probation on two separate occasions before the January 2020 events resulting in the Title IX investigation and violation of the LSU Code of Student Conduct. Moreover, the indisputable facts and evidence will establish that Plaintiff has received due process under the applicable university policies, and as required by law, during the investigation and adjudication of the Title IX complaint against him.

On February 4, 2020, LSU's Title IX Lead Investigator, Jeffrey Scott, sent Plaintiff a letter (as redacted, attached as Exhibit 1), notifying Plaintiff that a complaint had been made against him involving potential violations of Title IX and LSU's Policies on sexual misconduct (PM-73) (included with Exhibit 1), specifically with regard to an incident of non-consensual sexual intercourse on January 23, 2020.

Having received notice of these serious allegations, on February 6, 2020, consistent with its recently updated policy, the Athletic Department made a separate administrative decision to suspend Plaintiff from the football team pending the outcome of the investigation.

On February 19, 2020, Mr. Scott interviewed Plaintiff, who was accompanied by his father. Plaintiff was given an opportunity to respond to the allegations and explain his version of the events. Upon completing the investigation, Mr. Scott concluded that Plaintiff violated LSU's PM-73 policy regarding sexual misconduct, specifically concerning non-consensual sexual intercourse. On March 6, 2020, as required by PM-73, LSU formally and in writing notified the complainant and Plaintiff of its findings (as redacted, attached as Exhibit 2).[1] They were advised that appeals of the decision may be made in writing to the Title IX Coordinator, Jennie Stewart, within ten

---

[1] PM-73, Section V.B. provides, "Both the complainant and the respondent will be given written notice of the results of the investigation."

2360283v.1

business days. Plaintiff, through his attorney, provided a written notice of appeal to Jennie Stewart on March 12, 2020, and a substantive appeal memorandum on March 18, 2020. After a thorough review of the record, Ms. Stewart upheld the finding on April 2, 2020 and provided Plaintiff written notice of her decision. Thereafter, as anticipated by the formal resolution provision of PM-73, the matter was forwarded to the LSU Office of Student Advocacy and Accountability ("SAA") for adjudication.[2]

On April 17, 2020, SAA issued a charge letter to Plaintiff, advising Plaintiff that he would have an opportunity to share information regarding the incident during an accountability meeting and requesting that Plaintiff submit a statement in advance of the meeting. On April 24, 2020, Plaintiff participated in the accountability meeting via Zoom with the Associate Dean of Students and Director of SAA, Jonathan Sanders, wherein the parties discussed the Title IX report and the underlying incident. Plaintiff was given the opportunity and did, in fact, comment on the report and provide additional information regarding the events at issue. On May 1, 2020, Dr. Sanders issued an outcome letter to Plaintiff, finding him responsible for violating two provisions of the LSU Code of Student Conduct and suspending him from the university effective May 10, 2020 through May 31, 2021. The letter advised Plaintiff that he had three business days to decline that outcome and request that the case be reheard by a University Hearing Panel (UHP).

Contrary to Plaintiff's allegation that he did not become aware of the actions required by the letter until May 8, 2020, LSU's records irrefutably show that Plaintiff accessed the outcome letter before the deadline to request a UHP had passed. Nevertheless, Plaintiff failed to timely decline that outcome and request a UHP. Instead, Plaintiff requested a UHP on May 12, 2020,

---

[2] *See* PM-73, Section VI.

almost a week after the request was due. That same day, the SAA Coordinator sent a letter confirming Plaintiff's decision to decline the outcome. However, as noted in the June 4, 2020 letter from LSU General Counsel to Plaintiff's attorneys, the time frame to decline the outcome had long since expired by the time Plaintiff submitted his request. On June 5, 2020, Plaintiff was also informed via email that his UHP request was being denied as untimely.

## II.  LAW AND ARGUMENT

### A.  LEGAL STANDARD

In order to obtain a preliminary injunction, the movant must offer evidence to clearly establish the following: (1) that there is a substantial likelihood that it will succeed on the merits, (2) that there is a substantial threat that it will suffer irreparable injury if the district court does not grant the injunction, (3) that the threatened injury to the plaintiff outweighs the threatened injury to the defendant, and (4) that granting the preliminary injunction will not disserve the public interest.[3] A preliminary injunction is an "extraordinary remedy," such that "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule."[4]

### B.  ARGUMENT

#### 1.  Mandatory Preliminary Injunctions are Disfavored

Plaintiff incorrectly characterizes his requested relief as a preservation of the status quo. Plaintiff is already suspended from LSU, and his request for a "stay" is actually a request that LSU be ordered to reinstate Plaintiff's standing as a student and member of the football team. Thus, the

---

[3] *Canal Authority of Florida v. Callaway*, 489 F. 2d 567, 572 (5th Cir. 1974). The same standard applies for both temporary restraining orders and preliminary injunctions. *See Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir.1987) ("The party seeking such [injunctive] relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted.").

[4] *Mississippi Power & Light v. United Gas Pipe Line Co.*, 760 F. 2d 612, 621 (5th Cir. 1985).

requested relief is mandatory – that is, commanding the doing of some action – rather than prohibitive in nature. Mandatory preliminary injunctions are clearly disfavored under the law:

> In evaluating claims for preliminary relief, courts are bound by stringent standards….Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.[5]

The facts and law in this case do not clearly favor the Plaintiff, and Plaintiff does not meet his burden of proving all four necessary elements for institution of a preliminary injunction, as discussed in detail below.

### 2. Plaintiff has not established a substantial likelihood of success on the merits.

#### a. Claim One: Violation of Title IX (Against LSU)

Plaintiff alleges that LSU treated him differently because of his sex; specifically that the victim, Jane Roe, received preferential treatment during the university disciplinary process because"[s]he had the process specifically explained to her and even her parents," and LSU "[gave] deference to and bestow[ed] heightened credibility upon Jane."[6]

Plaintiff relies on theories of Title IX liability adopted by the Sixth Circuit, specifically, the theories of erroneous outcome and selective enforcement.[7] These theories of liability have also been adopted by the Second Circuit.[8] In short, the erroneous outcome theory involves a claim that the plaintiff was innocent and wrongly found to have committed an offense, whereas, the selective enforcement theory claims that, regardless of the student's culpability, the severity of the penalty

---

[5] *Martinez v. Mathews*, 544 F.2d 1233, 1242–43 (5th Cir.1976) (internal citations omitted).
[6] R. Doc. 3, p.6.
[7] *See id.* at p. 5.
[8] *See Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).

and/or the university's decision to initiate proceedings was affected by the plaintiff's gender.[9] Plaintiff has failed to allege facts that would support either theory.

First, "[p]laintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding. If no such doubt exists based on the record before the disciplinary tribunal, the claim must fail."[10] Moreover, "[a] plaintiff must [] also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding."[11] "Such allegations might include, *inter alia,* statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."[12] In this case, however, Plaintiff has not made any detailed allegations that would support a causal connection between the allegedly erroneous outcome and gender bias; rather, Plaintiff merely recites the conclusory allegation that the outcome was discriminatory.

Second, Plaintiff has failed to state a claim under the theory of selective enforcement, as the pleadings are completely devoid of any reference to a similarly-situated female student who received different disciplinary treatment on the basis of sex. Plaintiff incorrectly compares himself to the complainant. The fact that Jane Roe is female and Plaintiff is male has no bearing on a claim for selective enforcement, because these individuals are not similarly-situated.

### b. Claim Two: § 1983, Denial of Due Process (Against Galligan)

Plaintiff cannot establish that he is likely to succeed on his §1983 claim because Interim President Galligan has not violated any of Plaintiff's due process rights guaranteed by the

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*

2360283v.1

Fourteenth Amendment. In examining whether an individual's procedural due process rights have been violated, the United States Supreme Court has adopted a two-step analysis. The first question "asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."[13] Simply put, the issue is whether Plaintiff was deprived of a constitutionally protected right without notice and an opportunity to be heard.

Although Plaintiff asserts an interest in his reputation and in pursuing an education, he does not specifically assert that he was denied due process in connection with his dismissal from the football team or the loss of his athletic scholarship – and for good reason. It is well established that the ability to participate in athletic activities falls outside of the constitutional protection of due process. As explained by the United States Fifth Circuit Court of Appeal:

> The due process clause of the fourteenth amendment extends constitutional protection to those fundamental aspects of life, liberty, and property that rise to the level of a "legitimate claim of entitlement" but does not protect lesser interests or "mere expectations." A student's interest in participating in a single year of interscholastic athletics amounts to a mere expectation rather than a constitutionally protected claim of entitlement. As decided in *Mitchell*, it falls "outside the protection of due process."[14]

Likewise, the Louisiana First Circuit Court of Appeal has held:

> To prevail on the due process claim, [the plaintiff] must show the existence of some property or liberty interest which has been adversely affected by state action. However, it is clear that participation in intercollegiate athletics is not a property right, but is a privilege not protected by Constitutional due process safeguards. Because a student-athlete has no liberty or property interest in participating in intercollegiate athletics, [the plaintiff] could not make a prima facie showing that

---

[13] *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010 (quoting *Ky. Dept. of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citations omitted)).

[14] *Walsh v. Louisiana High Sch. Athletic Ass'n*, 616 F.2d 152, 159–60 (5th Cir.1980) (discussing *Mitchell v. Louisiana High Sch. Athletic Ass'n*, 430 F.2d 1155, 1158 (5th Cir.1970)).

> he would prevail on the merits of his due process claim….[T]herefore, these claims could not be the basis for the issuance of the preliminary injunction.[15]

In addition, Plaintiff does not have a recognized property interest in his athletic scholarship.[16] Because these alleged interests are not constitutionally protected interests, they do not establish a basis for Plaintiff's due process claim.

To the extent Plaintiff has a due process protected interest in his continued education, due process is flexible, and the required procedural protections vary by situation. Accordingly, courts may assess the amount of process due by considering three distinct factors: "(a) the student's interests that will be affected; (b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (c) the university's interests, including the burden that additional procedures would entail."[17]

In the context of a public school disciplinary suspension, the Supreme Court has held students are afforded limited due-process protections in the form of "an 'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the proper context.'"[18] The Fifth Circuit has further stated that, "[t]he student must be given notice of the charges against him, an explanation of what evidence exists against him, and an opportunity to

---

[15] *Brennan v. Bd. of Trustees for Univ. of Louisiana Sys.*, 95-2396 (La. App. 1 Cir. 3/27/97); 691 So.2d 324, 330 (internal citations omitted).

[16] *See Holden v. Perkins*, 398 F.Supp.3d 16, 23 (E.D. La.2019) ("Here, Plaintiff fails to show—and this Court can find no binding precedent to suggest—that there is a recognized property interest in the renewal of her year-to-year athletic scholarship or her participation on the women's volleyball team.")

[17] *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir.2017) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

[18] *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) (quoting *Goss v. Lopez*, 419 U.S. 565, 584, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)).

present his side of the story."[19] However, "[t]he student is not entitled to the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident."[20]

Plaintiff's own Verified Complaint demonstrates that he received notice and was involved, at a minimum, in an informal give-and-take with LSU on two occasions. Plaintiff acknowledges that on February 4, 2020 and February 6, 2020 he was notified of the claims being made against him.[21] Additionally, on February 19, 2020, Plaintiff was interviewed by Mr. Scott concerning the allegations against him.[22] Subsequently, on April 24, 2020, Plaintiff participated in an accountability meeting with Dr. Sanders, wherein they discussed the underlying incident and the investigation.[23] Although Plaintiff argues that the accountability meeting "contained very little discussion about the case,"[24] he fails to demonstrate that he was denied an opportunity to characterize and provide context to his conduct. Moreover, Plaintiff had an opportunity to submit a statement in advance of his accountability meeting, but Plaintiff failed to do so.

Plaintiff further implies that LSU failed to follow its own policies when it denied Plaintiff's request for a UHP.[25] While LSU disputes that contention, "[t]he failure of a state agency to comply with its internal regulations is insufficient as a matter of law to establish a violation of Due Process,

---

[19] *Esfeller v. O'Keefe*, 391 Fed.Appx. 337, 342 (5th Cir.2010).
[20] *Id.*
[21] R. Doc. 1, p.11, ¶¶66 -71.
[22] *Id.* at ¶74.
[23] *Id.* at p.15, ¶¶108 -110.
[24] *Id.* at p.16, ¶111.
[25] R. Doc. 3, p.7 ("[J]ohn is only seeking what is promised to him under LSU policy.").

because constitutional minima nevertheless may have been met."[26] The United States District Court for the Western District of Louisiana has further explained:

> [A] University's departure from its own rules and regulations does not, by itself, violate procedural due process unless the rule or regulation codifies the pertinent constitutional standard. A plaintiff has no due process right to state-implemented procedures. The relevant inquiry at all times is whether or not a plaintiff has been afforded constitutionally adequate notice and a constitutionally adequate hearing.[27]

Thus, even if LSU did violate its own internal policies, which it did not, Plaintiff has not established that such a failure on LSU's part, if true, violates due process because Plaintiff still received notice and an opportunity to be heard.

In addition, Plaintiff alleges that LSU's insistence on requiring a timely request for UHP is questionable considering Louisiana Governor John Bel Edwards' proclamation suspending legal deadlines during the COVID-19 pandemic. Specifically, the proclamation suspended deadlines applicable to "legal proceedings in all courts, administrative agencies, and boards."[28] Plaintiff has not cited to, and undersigned counsel is unaware of, any authority that has considered a university disciplinary proceeding to be a "legal proceeding."

Moreover, the United States Department of Education, Office of Civil Rights (OCR) has issued guidance for postsecondary institutions regarding Title IX adjudications during the COVID-19 national emergency (attached as Exhibit 3):

---

[26] *Brown v. Texas A & M Univ.*, 804 F.2d 327, 335 (5th Cir.1986); *see also Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 92, n.8; 98 S.Ct. 948, 956; 55 L.Ed.2d 124 (1978) (suggesting that a university's failure to follow its own academic rules does not, in itself, give rise to a Due Process violation).

[27] *Pham v. Univ. of Louisiana at Monroe*, 194 F.Supp.3d 534, 544 (W.D. La.2016), *aff'd sub nom. Dung Quoc Pham v. Blaylock*, 712 Fed.Appx. 360 (5th Cir.2017).

[28] *See* Proclamation 52-JBE-2020, Section 5.H.

Question 6:

What if an institution needs more time than usual to complete a Title IX sexual harassment investigation and adjudication due to circumstances arising from operational challenges relating to COVID-19?

Answer:

**Any decision regarding the timetable of an investigation or adjudication should be made on a case-by-case basis**. For example, Title IX requires institutions to adopt reasonably prompt time frames for major stages of the complaint process. There is no fixed time frame under which a school must complete a Title IX sexual harassment investigation, and the Department's 2017 Q&A on Campus Sexual Misconduct is clear that reasonableness and good faith are the key elements of compliance with Title IX. During this national emergency, institutions should not delay investigations or hearings solely on the basis that in person interviews or hearings are cumbersome or not feasible, so long as the institution is able to comply with the requirements in 34 CFR 106.8 to resolve complaints promptly and equitably. However, OCR will evaluate an institution's good-faith effort to conduct a fair, impartial investigation and adjudication in a timely manner, on a case-by-case basis that takes into account time frames that are impacted by COVID-19 and reasons why delays due to this national emergency may be unavoidable in particular cases.

To be clear, institutions may not institute a blanket policy putting all investigations or disciplinary proceedings on hold until campuses resume normal operations.…

Question 7:

If an institution has suspended instruction or is only offering distance learning, may it modify its Title IX procedures for resolving complaints due to the current circumstances?

Answer:

Yes, with limitations. For instance, **the COVID-19 emergency does not vitiate the requirement under 34 C.F.R. § 106.8 that an institution's grievance procedures provide for the prompt and equitable resolution of student and employee complaints of sex discrimination**. As set forth in the Department's 2017 Q&A on Campus Sexual Misconduct and the Department's 2001 Revised Guidance on Sexual Harassment, this includes adequate, reliable, and impartial investigations, which provide the parties with the equal right to review and respond to evidence and the equal right to have an adviser of choice present during meetings

and proceedings. However, such procedures may be implemented remotely, using technology.[29]

Accordingly, LSU was not required suspend Plaintiff's Title IX process, and, in fact, was specifically advised by the federal agency with oversight of Title IX compliance to not to suspend disciplinary proceedings.

### c. Claim Three: Breach of Contract (Against LSU)

This Court does not have subject-matter jurisdiction over Plaintiff's breach of contract claim against LSU. The Eleventh Amendment sovereign immunity, preventing private suits against the State in federal court, extends to state agencies and boards that are considered "arms of the state," such as the LSU Board of Supervisors.[30] Sovereign immunity is subject to the following two exceptions: (1) immunity may be abrogated by Congress under § 5, the Enforcement Clause of the Fourteenth Amendment, or (2) a State may voluntarily and knowingly consent to suit.[31] Although case law has established that, in accepting federal funds, LSU has waived its sovereign immunity from suits brought under Title IX,[32] LSU has not waived its immunity to state law claims for breach of contract. In fact, Louisiana has expressly declined to waive its immunity under the Eleventh Amendment.[33]

Plaintiff argues that "LSU waived any Eleventh Amendment immunity to which it may be entitled because its contractual obligation is directly traceable to its receipt of federal funds: LSU

---

[29] (Emphasis added).

[30] *See Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir.2013) ("[T]he LSU Board is an arm of the state and is immune from suit under the Eleventh Amendment.")

[31] *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir.2005).

[32] *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 875 (5th Cir.2000); *see also, Gruver v. Louisiana through Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 401 F.Supp.3d 742, 752 (M.D. La.2019) .

[33] *See* La. R.S. §13:5106(A) (providing that "[n]o suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court").

2360283v.1

holds UHPs to meet its obligations under Title IX."[34] Plaintiff cites no authority for this unusual proposition, and no authority appears to exist. To the contrary, numerous cases illustrate that federal courts must dismiss breach of contract claims against the State, even in the context of a Title IX allegation of discrimination.[35]

Notwithstanding this Court's clear lack of subject matter jurisdiction over Plaintiff's breach of contract claim, the facts in this matter do not support a finding that a contract was ever formed, let alone breached. Plaintiff alleges that a contract was created after LSU offered to hold a UHP in its May 1, 2020 outcome letter and Plaintiff accepted that offer on May 12, 2020. This argument is easily disposed of as a matter of Louisiana law.

The May 1, 2020 outcome letter was a unilateral expression of LSU's policy that a respondent may decline an outcome and request a UHP. The publishing of a policy is not evidence of any meeting of the minds between LSU and Plaintiff over bargained-for terms. Accordingly, there was no offer and acceptance.

Moreover, to the extent that the outcome letter could be considered an offer, which it is not, it would constitute an irrevocable offer during the specified period of acceptance.[36] Pursuant to Louisiana Civil Code article 1929, "an irrevocable offer expires if not accepted within the time prescribed." Therefore, the alleged offer would have expired within three business days of the May 1 letter, which was well before Plaintiff's alleged acceptance on May 12.

---

[34] R. Doc. 3, p.8.
[35] *See e.g., Doe v. Univ. of Mississippi*, 361 F.Supp.3d 597 (S.D. Miss.2019); *Doe v. Univ. of Texas at Austin*, 1:19-CV-398-LY, 2019 WL 9076003, at *1 (W.D. Tex. Nov. 8, 2019).
[36] *See* La. Civ. Code art. 1928.

### 3. Plaintiff has not established a substantial threat of irreparable injury.

Plaintiff's allegations of irreparable harm primarily focus on his ability to be a member of the LSU football team. Plaintiff's position on the football team, however, is not directly at issue. An injunction to reinstate Plaintiff as a student at LSU does not mean that Plaintiff will automatically be reinstated to the football team. Therefore, any alleged harm related to the interruption of his team membership would not be remedied by a temporary restraining order or a preliminary injunction directing Interim President Galligan to reinstate Plaintiff as a student.

Plaintiff does not allege that he has an intent to enroll in summer class or that he has missed the opportunity to do so. Therefore, Plaintiff cannot demonstrate any urgency for immediate reinstatement through a temporary restraining order or preliminary injunction, when there is ample time for a full injunction hearing on his claims before the fall semester begins.

Furthermore, an injunction is not an appropriate remedy for Plaintiff's other alleged harms. Specifically, the loss of the athletic scholarship does not present the kind of harm that an injunction is designed to prevent, because the scholarship itself defines the respective rights and responsibilities of the NCAA member institution and the student-athlete. Plaintiff submits no support for his allegation that his opportunity to play professional football "evaporated overnight" or that he would be prevented in any way from pursuing any and all of his professional sports ambitions. This type of speculative harm is insufficient to warrant an injunction. As explained by one court:

> Plaintiff asserts that he will suffer irreparable injury if the temporary restraining order is not granted because he will…lose his opportunity to be scouted and recruited by the National Football League ("NFL").…As for the loss of an opportunity for a professional football career, such harm is speculative.[37]

---

[37] *Butler v. Nat'l Collegiate Athletic Ass'on*, CIVA 06-2319 KHV, 2006 WL 2398683, at *4 (D. Kan. Aug.

Thus, Plaintiff cannot establish that he will suffer irreparable harm, and this factor weighs in favor of LSU and Interim President Galligan.

### 4. The balance of hardships favors LSU and a grant of injunction will disserve the public interest.

Plaintiff has not established that the threatened injury if the injunction is denied outweighs the harm if the injunction is granted. LSU has a strong interest in disciplining its students and preserving a campus free of sexual assault. LSU also has a strong interest in preserving and exercising its discretion to allow students to participate in extra-curricular activities such as athletics. Plaintiff, on the other hand, merely speculates that the suspension will "undermine any hope of eventually playing professionally" and that "[h]is future career trajectory will forever be altered."[38]

Furthermore, the grant of the injunction will disserve the public. The State of Louisiana has a substantial interest in promoting the integrity and safety of state educational institutions, as evidenced by the Louisiana Constitution's establishment of and the Revised Statutes allocation of authority to LSU.[39] Pursuant to La. R.S. §17:3351, LSU has authority to exercise power necessary to supervise and manage the day-to-day operations of institutions under its control, including the power to "[a]dopt, amend or repeal rules and regulations for the government and discipline of

---

15, 2006) (citing *Colo. Seminary v. NCAA*, 417 F.Supp. 885 (D.Colo.1976) (interest in future professional careers speculative and not of constitutional dimension); *Bowers v. NCAA*, 118 F.Supp.2d 494, 509–510 (D.N.J.2000) (damages for loss of potential future athletic career too speculative to support damages claim)); *see also McAdoo v. Univ. of N. Carolina at Chapel Hill,* 225 N.C.App. 50, 67; 736 S.E.2d 811, 823 (2013) (alleged damages for reduced NFL earnings were too speculative and hypothetical to provide standing).

[38] R. Doc. 3, p.9.
[39] *See* La. Const. art VIII, § 7(A) and La. R.S. §§17:3351 through 3351.13.

students."[40] An injunction undermine that authority and threaten the public interest by subverting LSU's established policies and methods of maintaining conduct accountability for its students.

### III.  CONCLUSION

Plaintiff's Motion should be denied as a matter of law because he cannot meet his burden of establishing all four requisites for obtaining a preliminary injunction. At the hearing, LSU will present evidence in support of the disciplinary outcome and LSU's compliance with its policies and procedures. For the reasons outlined above, Plaintiff cannot establish a substantial likelihood that he will succeed on the merits of either his Title IX claim, §1983 claim, or breach of contract claim, nor will he suffer irreparable harm if this Court does not grant the injunction prior to trial on the merits.

TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.

By: **/s/  David J. Shelby, II**
Vicki M. Crochet, Bar #4614
David J. Shelby, II, Bar #22614
Robert W. Barton, Bar #22936
Leah C. Cook, Bar #37641
450 Laurel Street, 8th Floor (70801)
P.O. Box 2471
Baton Rouge, LA 70821-2471
Telephone: (225) 387-3221
Facsimile:  (225) 346-8049
Email: vicki.crochet@taylorporter.com
david.shelby@taylorporter.com
bob.barton@taylorporter.com
leah.cook@taylorporter.com

Attorneys for Louisiana State University

---

[40] La. R.S. 17:3351(A)(13).