UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:20-cv-00379 JWD-SDJ |
| ) | |
| LOUISIANA STATE UNIVERSITY, *et al.*, ) | |
| ) | **PLAINTIFF'S REPLY MEMORANDUM** |
| ) | **IN SUPPORT OF DOC. 3** |
| Defendants. ) | |
| ) | |

Plaintiff John Doe ("John"), by and through counsel, hereby submits this Reply Memorandum ("Reply") in Support of his Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion") against Defendants, which seeks to stay his one-year suspension from Louisiana State University ("LSU") pending a University Hearing Panel.

Defendants' Memorandum in Opposition (the "Opposition") serves the sole purpose of disparaging John's character and rejecting John's claims without providing substantive support for any of their arguments. Defendants' primary argument appears to be that John is entitled to fewer rights given his irrelevant personal history. The Opposition's character assassination ignores the fact that Defendants are denying John certain rights due to a missed deadline that they themselves forgave. Additionally, Defendants portray the relief sought by John as unreasonable when, in fact, John is only seeking a hearing to address the claims against him. Despite making a concerted effort to portray John in a negative light, Defendants failed to make any colorable argument against injunctive relief, which remains warranted in this case.

### I.     FACTUAL BACKGROUND

John incorporates the facts as stated in his Verified Complaint as if restated herein and highlights only the information that Defendants fundamentally mischaracterize.

Defendants draw attention to John's prior LSU policy violations that are entirely irrelevant to John's claims. John's prior disciplinary history is unrelated to the present matter. Even if it were related, the prior history does not excuse Defendants' failures to follow the processes required by Title IX and LSU's policy.

Defendants' claim that John was given an opportunity to respond to the allegations against him by way of the February 19, 2020 meeting is incredibly deceptive, and fails to include that the notice John received failed to identify the complainant, where the incident allegedly occurred, and any details regarding is alleged actions. How John should have been expected to prepare for a meeting he had no meaningful information about, and to be ready to fully articulate his defenses, is a mystery.

Defendants further chose to ignore the fact that during John's Accountability Meeting, the underlying incident was only discussed when John himself brought it up. Defendants' emphasize that John's acceptance of LSU's offer to hold a University Hearing Panel ("***UHP***") came several days after its stipulated deadline – this ignores the fact that LSU's inappropriate revocation of its offer was made **over three weeks later**, during a time that life was at a standstill in wake of COVID-19. Moreover, LSU acknowledged John's acceptance of its offer and agreed that a UHP would be scheduled.

    II.    **LAW AND ARGUMENT**

    **A. John Is Not Seeking A Mandatory Injunction, But To Preserve The Status Quo**

Defendants mischaracterize John's request for relief as a mandatory injunction seeking to alter the status quo. While Defendants would benefit from this position, given that a mandatory injunction imposes a heighted standard (*see Doe v. Univ. of Connecticut, et al.*, No. 3:20cv92, 2020 U.S. Dist. LEXIS 11170 at *2 (D. Conn. Jan. 23, 2020)), John is only seeking to preserve the

status quo. "The status quo is 'the last actual, peaceable uncontested status which preceded the pending controversy.'" *Id*. (*citing N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 833 F.3d 37 (2d Cir. 2018)). Here, the last actual, peaceable uncontested status between the parties is the status as of May 12, 2020, when John accepted LSU's offer to hold a UHP, and LSU acknowledged acceptance and agreed to schedule a hearing. Indeed, had LSU not impermissibly reneged its offer and held the UHP as agreed, John would not have been forced to file suit. Because John is seeking to preserve the status quo, Defendants' argument to the contrary fails.

### B. John Is Highly Likely To Succeed On His Title IX And Due Process Claims

#### 1. *Defendants' willfully ignore John's evidence in support of his Title IX claim and disregard the statute's purpose.*

John is highly likely to succeed on his Title IX claim under either an erroneous outcome or a selective enforcement theory. *First,* John notes that Defendants' bewildering characterization of the various Title IX theories as existing only in the Sixth and Second Circuits is simply incorrect. Defendants apparently ignored the fact that such theories have regularly been recognized and applied by numerous courts within this Circuit. *See, e.g. Doe v. Univ. of Miss.*, No. 3:18CV-63-DPJ-FKB, 2018 U.S. Dist. LEXIS 123181 at *11 (S.D. Miss. July 24, 2018) (noting that Defendants failed to identify any Fifth Circuit case where the court "declined to adopt such [Title IX] theories of liability," stating that "district courts within the Fifth Circuit have consistently addressed this type of Title IX claim," and finding that the plaintiff's Title IX claim under the erroneous outcome theory survived a motion to dismiss); *Oliver v. Univ. of Tex. Sw. Med. Sch.*, No. 3:18-CV-1549-B, 2019 U.S. Dist. LEXIS 21289 at *53 (N.D. Tex. Feb. 11, 2019); *Pacheco v. St. Mary's Univ.*, No. 15-cv-1131 (RCL), 2017 U.S. Dist. LEXIS 94510 at *34 (W.D. Tex. June 20, 2017); *Givens v. Dillard Univ.*, No. 19-12448 SECRION I, 2019 U.S. Dist. LEXIS 207607 at *7-9 (E.D. La. Dec. 3, 2019).

*Second*, an erroneous outcome claim requires a plaintiff to "allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Univ. of Miss.* at *11. A plaintiff must also "allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.* Here, the entire disciplinary proceeding is subject to scrutiny given that John had no opportunity to review the evidence against him until after he was considered responsible and no opportunity for a hearing before neutral decision makers.

Defendants falsely claim that John has not made any detailed allegations that would support a causal connection between the erroneous outcome and gender bias. John refers Defendants to his Verified Complaint, specifically ¶ 87 ("John became aware that on January 29, 2020, Mr. Scott and Jennie Stewart…had a phone call with Jane Doe's **parents** to explain the Title IX process and reporting options."), ¶ 88 ("Ms. Stewart then met with Jane on January 31, 2020 to explain the process even further, during which Jane agreed to move forward with the Title IX process."), ¶ 89 ("Upon information and belief, Jane was in regular contact with the Title IX and ADA Coordinator and Title IX investigators/staff who worked with Jane through the process."), ¶ 90 ("In contrast, John's frequent requests for information were ignored,") and ¶ 91 ("LSU later blamed John for his failures to abide by the nuances of LSU policy, but John was doomed from the start given that the process was never explained to him in the specific and detail manner as it was to Jane.") To the extent that Defendants will later seek to characterize this as bias against an accused student rather than a male student, John reminds them that courts have considered this to be a "distinction without a real difference." *See Doe v. Univ. of Denver*, 952 F.3d 1182, 1203 (10th Cir. 2020).

*Third*, to prevail on a selective enforcement theory, a plaintiff needs to show that, regardless of culpability, the severity of the penalty and/or decision to initiate proceedings was

affected by his gender. *Plummer v. Univ. of Houston*, 860 F.3d 767, 777 (5th Cir. 2017). Courts have found that it is sufficient for a plaintiff to assert his innocence of engaging in nonconsensual sex and allege procedural bias and improprieties in the university's discipline process. *Id.* (*citing Doe v. Columbia Univ.*, 831 F.3d 46, 50, 53, 59 (2nd Cir. 2016)). Defendants' claim that "[t]he fact that Jane Roe is female and Plaintiff is male has no bearing," is preposterous. Title IX exists to ensure that students will not be excluded from or denied the benefits of education opportunities based upon their gender. Defendants now seek to exclude John from and deny him the benefits of his education based on an insufficient and discriminatory process. John has consistently maintained that his interaction with Jane was consensual. The process was made manageable for Jane, whose version of events was unquestioned, while John's regular inquiries regarding the process fell upon deaf ears.

### 2. *John's case is not about football, it is about the consequences of being branded a sexual predator for life without due process.*

John is substantially likely to succeed on his 42 U.S.C. § 1983 claim. It is well-established that a student has a constitutionally protected interest in his college education. *Dixon v. Ala. State Bd. of Ed.*, 294 F.2d 150, 157 (5th Cir. 1961). Despite it not being a court of law, a university still must employ "fundamentally fair procedures to determine whether [] misconduct has occurred." *Plummer* at 773. At minimum, a student is entitled to a notice of the charges against him, an explanation of the evidence against him, and an opportunity to explain his side of the story. *See Oliver* at *25. Indeed, "[i]f a college student is to be marked for life as a sexual predator, it is reasonable to require that he be provided a fair opportunity to defend himself and an impartial arbiter to make that decision." *Plummer* at fn. 10 (*citing Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 604-605 (D. Mass. 2016)).

Defendants claim that this process should be limited to an "informal give and take," deliberately misunderstanding that is precisely the relief John seeks. The "notice" John received failed to identify critical information and in no way could prepare him to fully defend himself during the February 19th meeting. In fact, John attended at the meeting expecting to learn details about his supposed violation. However, LSU denied him the opportunity to review the evidence against him until after he was adjudged responsible. Similarly, Defendants claim that the Accountability Meeting was another opportunity for John to share his story, without mentioning that Jonathan Sanders used the meeting to ask John personal questions and John took it upon himself to ask questions and attempt to demonstrate his innocence. Contrary to Defendants' presumptions, John is not seeking a full criminal trial. John simply seeks a UHP with a meaningful opportunity to be heard and to rebut the alleged evidence against him in front of neutral decision makers.

### a) **Defendants overlook the purpose of the stayed deadlines.**

Defendants' misplaced lecture regarding the Office of Civil Rights' ("OCR") stance on Title IX adjudications is similarly unavailing and incorrectly frames the issue. In their incessant emphasis on the OCR's guidance that the Title IX process should not be suspended, Defendants overlook the fact that OCR has also cautioned against the exact opposite and has reprimanded universities from rushing through the Title IX process. In 2016, the OCR concluded that Wesley College violated a student's Title IX rights in its hurried disposition and adjudication of a complaint. Specifically, Wesley College failed to give the student an opportunity to share his version of events, the student was not given the opportunity to challenge the evidence against him, and was denied an adequate opportunity to defend himself at a hearing. The OCR struck down

Wesley's College rushed procedure, clearly indicating that students are entitled to an equitable process, which is precisely what John seeks.

### b) Governor's Proclamation Staying Deadlines

The Governor of Louisiana's March 16, 2020 Proclamation stayed all legal proceedings in courts, administrative agencies, and boards until at least April 13, 2020, which was subsequently extended to April 30, 2020, to May 15, 2020, and then June 15, 2020. Defendants fail to give any deference to the reason behind the Governor's Proclamations, being that since the early months of 2020, it has been anything but business as usual. The global pandemic has altered nearly every aspect of life and, given the still uncertain circumstances, rigid deadlines are impractical. Defendants' assertion that John is seeking a full stop on his disciplinary process ignores that the Proclamations simply mean that greater flexibility is required in these trying times and LSU should have considered the circumstances before unilaterally retracting its offer to hold a UHP.

### C. John Is Facing The Substantial, Irreversible, And Lifelong Injury Of Being Forever Branded A Sexual Predator

The Opposition limits the injuries John will face absent injunctive relief to loss of his place on the football team and his athletic scholarship, without giving any thought to the greater, more personal injuries John is sure to face. "[C]ommon sense suffices to understand that an adjudication of responsibility for sexual misconduct carries a …powerful stigma." *Plummer* at fn. 10 (*citing Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 615 (E.D. Va. Feb. 25, 2016). With a sexual assault finding permanently on his academic record, John is likely to lose employment opportunities, educational advancement, and personal relationships. LSU's rushed decision to find John responsible and unjust refusal to hold a UHP will lead to permanent consequences when John's side of the story has not even been fully heard. This element unquestionably weighs in favor of John.

### D. Defendants Failed To Articulate Any Harm That May Occur If Injunctive Relief Is Granted

That John is in imminent danger of substantial injury has been established. If the requested relief is granted, LSU will suffer no great inconvenience. Rather, LSU will only be obligated to hold a UHP as offered to and accepted by John, and as demanded by due process principles. The Opposition fails to articulate any harm that will befall LSU should this Court stay John's sanction pending a hearing panel. Accordingly, this factor weighs in John's favor.

### E. Defendants Cannot Characterize The Ability To Derail John's Career As Promoting The Public Interest

Lastly, injunctive relief in this case will not disserve, and indeed will promote, the public interest. "The public has a strong interest in the prevention of any violation of constitutional rights." *Favia v. Indiana Univ. of Pa.*, 812 F. Supp. 578, 585 (W.D. Pa. Nov. 2, 1992). LSU's reliance on its own interest in promoting its policies is inconsequential in comparison. Courts have disregarded such an interest in recognition of students' rights to treated fairly in the university disciplinary process. *See, e.g. Plummer* at fn. 10 (*citing Smyth v. Lubbers*, 398 F. Supp. 777, 797 (W.D. Mich. 1975) ("In the interest of order and discipline, the College is claiming the power to shatter career goals, and to make advancement in our highly competitive society much more difficult for an individual than it already is."). Granting John the relief he seeks will advance public interest, therefore this factor also weighs in his favor.

### III. CONCLUSION

John is not seeking to have the entire disciplinary process halted or reversed – John simply seeks the hearing that LSU offered and promised to him, and that is due to him according to Title IX and due process principles. Because John can successfully establish the factors for injunctive relief, and because Defendants' Opposition serves to besmirch John rather than substantiate their

claims, John respectfully requests that this Court grant him injunctive relief and stay the sanction against him, pending the outcome of a UHP.

Respectfully Submitted,

*/s/ Kristina W. Supler*
Susan C. Stone (*pro hac vice*)
Kristina W. Supler (*pro hac vice*)
Kohrman Jackson & Krantz, LLP
1375 E. 9th Street, 29th Floor
Cleveland, OH 44114
P: (216) 696-8700
F: (216) 621-6536
E: scs@kjk.com; kws@kjk.com

John S. McLindon
Brant M. Mayer
12345 Perkins Road, Building 2-Suite 202
Baton Rouge, LA 70810
P: (225) 408-0362
F: (877) 241-2631
E: mclindon@lawbr.net; mayer@lawbr.net

*Counsel for Plaintiff John Doe*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Reply Memorandum in Support of Doc. 3 was filed electronically on this 30th day of June, 2020. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Kristina W. Supler*
Kristina W. Supler
