UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN DOE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LOUISIANA STATE UNIVERSITY, *et al.*, )<br>)<br>Defendants. )<br>)<br>) | CASE NO. 3:20-cv-00379 JWD-SDJ<br><br>**<u>PLAINTIFF'S POST-HEARING BRIEF</u>** |

Plaintiff John Doe ("John"), by and through counsel, hereby submits this Post-Hearing Brief (the "Brief") in support of his Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion") against Defendants.

Defendant Louisiana State University's ("LSU") unlawful and discriminatory actions against John entitle him to injunctive relief. LSU may not claim that John's deadline to accept its offer to hold a University Hearing Panel ("UHP") had passed because the Louisiana Governor's proclamation suspending deadlines unambiguously applied to John's deadline. Defendant Interim LSU President Thomas C. Galligan ("Mr. Galligan") expressly recognized LSU's need to comply with the very same proclamation just days prior to LSU's offer. LSU also acknowledged John's acceptance of its offer and did not challenge that acceptance as untimely for nearly one month.

John is further entitled to injunctive relief because his one-year suspension, if upheld, would undoubtedly constitute an irreparable harm for which monetary damages are inadequate. Suspensions have regularly been found to constitute irreparable harm where the student would forever be forced to explain the sexual misconduct finding, which would lead to an unavoidable stigma and loss of countless opportunities. John is entitled to injunctive relief in the form of his sanction being stayed pending the outcome of a UHP.

I.      **LAW AND ANALYSIS**

   A. **The Louisiana Governor's Order Suspending Deadlines Applies To All State Entities And Boards**

LSU is unquestionably subject to the Governor's Proclamation Number 52 JBE 2020 (the "Proclamation"). *See* the Proclamation, attached as Exh. 1.

   1. *As a state board, LSU's Board of Supervisors is subject to the plain language of the Proclamation and was required to stay John's deadline.*

LSU is subject to the Proclamation based on the document's plain language. At Section 5.H.1, the Proclamation states "[l]egal deadlines…applicable to legal proceedings in all courts, administrative agencies, and boards, are hereby suspended until May 15, 2020." Defendants' Memorandum in Opposition (the "Opposition") insists that the proper defendant in this matter is in fact the Board of Supervisors of Louisiana State University and Agricultural Mechanical College (the "Board"). *See* Doc. 17 at pg. 1.

The Louisiana State Constitution created the Board, thereby making it a state entity. *See* La. Const. Art. VIII § 7. LSU's webpage dedicated to the Board defines it as "a constitutionally empowered board granted the authority and responsibility to 'supervise and manage the institutions, statewide agricultural programs, and other programs administered through its system.'" *See* a screenshot of the webpage, attached as Exh. 2. Moreover, the Board, as led by Mr. Galligan, has direct oversight over Student Affairs, the internal body that promulgates LSU policy, including the disciplinary process at issue here. *See* LSU Board Organizational Chart, attached as Exh. 3.

The Proclamation unambiguously required the Board, a state entity, to suspend its deadlines. Specifically, the Board could not enforce (and indeed it initially did not) the supposed 3-day deadline for John to accept LSU's offer for a UHP. LSU offered the UHP to John on May

1, 2020, the first day the Proclamation's deadline suspension went into effect. *See* Exh. 1 at Sec. 15. Because the Proclamation suspended deadlines until May 15, 2020, John's May 12, 2020 acceptance of the UHP offer was timely. Given LSU's insistence that the Board is the proper defendant, to assert that the Board is not subject to the Proclamation that specifically applies to deadlines imposed by boards is entirely unavailing.

### 2. *LSU, specifically Mr. Galligan, already admitted that the university was subject to the very Proclamation that required it to stay John's deadline*

On April 28, 2020, just days before LSU offered a UHP to John, Mr. Galligan, in his official capacity as LSU Interim President, issued a statement regarding the Proclamation. Specifically, Mr. Galligan noted that, in light of the Proclamation, LSU was subject to the extended stay-at-home order and must continue remote operations until at least May 15, 2020. Mr. Galligan stated, "**We must continue to follow the Governor's orders and remember that Louisiana is one of the states that COVID-19 has hit the hardest**." *See* Mr. Galligan's statement at https://lsu.edu/coronavirus/messages/email/04-28-message.php. He expressly acknowledged the importance of the Proclamation and LSU's mandated compliance with its terms. Defendants cannot now parse the Proclamation and claim LSU is not subject to the Proclamation's stayed deadline mandate when it previously indicated the university's strong support of and necessary compliance with the Proclamation.

### 3. *LSU already excused John's delayed UHP acceptance.*

Lastly, even though LSU was subject to the Proclamation's deadline suspension and its own Interim President mandated LSU compliance, LSU waived any right to claim that John's UHP acceptance was untimely. John accepted LSU's UHP offer on May 12, 2020, and LSU acknowledged acceptance that same day and agreed to schedule a UHP. This remained the status quo for nearly a month, until LSU's unilateral and improper revocation on June 5, 2020. LSU's

continued insistence that John's acceptance was untimely when LSU did not challenge John's acceptance for almost a month, and when all John is seeking is a proper hearing, is disingenuous in the extreme.

### B. John Is Facing Imminent Irreparable Injury, Including Being Irreversibly Branded A Sexual Predator And A Permanent Gap On His Record

If LSU is not required to stay John's one-year suspension pending the outcome of a UHP, John will unquestionably suffer irreparable injury.

#### 1. *Courts have consistently found irreparable injury when a student is suspended for sex-related violations.*

LSU's sanction of a one-year suspension is an irreparable harm for which monetary damages are inadequate. Indeed, numerous courts have acknowledged as much:

- *King v. Depauw Univ.*, No. 2:14-cv-70-WTL-DKL, 2014 U.S. Dist. LEXIS 117075 at *39-40 (S.D. Ind. Aug. 22, 2014): A student's suspension for the remainder of the semester and the following semester was an irreparable harm because he would forever have a gap on his record that he would inevitably be asked to explain, and admitting the sexual misconduct responsibility finding would lead to an un-erasable stigma;

- *Marshall v. Ohio Univ.*, No. 2:15-cv-775, 2015 U.S. Dist. LEXIS 31271 at *24 (S.D. Ohio Mar. 13, 2015): A one-semester suspension constituted irreparable harm where the student's ability to complete his degree would be delayed and he would forever have the disciplinary action on his record which may impact future career possibilities;

- *Doe v. Univ. of Conn.*, No. 3:20cv92 (MPS), 2020 U.S. Dist. LEXIS 11170 at *5 (D. Conn. Jan. 23, 2020): A two-year suspension and a sanction for sexual assault would "forever change the trajectory of [the student's] education and career," and constituted irreparable harm;

- *Doe v. Pa. State Univ.*, 276 F. Supp. 3d 300, 313-315 (M.D. Pa. Aug. 18, 2017): The university "understat[ed] the significance of the disciplinary action taken," where the student was subject to at least a two-year sanction and he would forever be forced to explain the gap; and

- *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017): A one-year suspension amounted to an irreparable harm due to the "reputational harm both on and off campus based on a finding rendered after an unfair hearing."

Absent injunctive relief, John will forever be forced to explain that he was found responsible for a sexual misconduct violation. His explanation that he was subject to a one-sided discriminatory process is unlikely to defeat the bias accompanying the gap on his record, costing John incalculable damages in lost opportunities.[1] Because John was suspended following an unfair process and any explanation he offers is unlikely to erase the stigma associated with a sexual misconduct finding, John will suffer irreparable injury and is entitled to injunctive relief.

> **2.    *John's suspension is the direct cause of his loss of ability to play football, an irreparable injury in itself.***

LSU's sanction imposed on John is indivisible from his removal from the football team. "Courts have consistently held that, given the fleeting nature of college athletics, [a] plaintiff[] will suffer irreparable harm by losing the opportunity to participate in their sport of choice on a continuous and uninterrupted basis." *Mayerova v. E. Mich. Univ.*, 345 F. Supp. 3d 983, 997 (E.D. Mich. Sept. 27, 2018); *see also Biediger v. Quinnipiac Univ.*, 616 F. Supp. 2d 277, 291 (D. Conn. May 22, 2009) (finding that because elite collegiate athletes only have a limited span of competitiveness, losing a year of competition would irreparably inhibit their development as athletes).

John is an exceptionally talented athlete. To claim that LSU's one-year suspension of John is completely separate from the football team's decision to remove John from the team is to ignore the larger picture. LSU's unfair Title IX process and sanctioning of John are the basis for his removal from the football team. Had John received a proper disciplinary process and had the ability

---

[1] Absent relief, John's story could be that of former Michigan State University and Houston Texans football player Keith Mumphery. Mr. Mumphery faced a sexual misconduct allegation, after which prosecutors declined to press charges and a Title IX panel cleared him, yet on appeal the university found him responsible for sexual misconduct. Over two years later, during which Michigan State paid an undisclosed settlement and vacated its findings, Mr. Mumphrey is still struggling to reestablish his professional career. *See Keith Mumphery v. Michigan State University, et al.*, Case No. 1:18-cv-00576-JTN-ESC, ECF No. 1 (W.D. Mich. May 22, 2018); *see also* https://www.nytimes.com/2019/06/01/sports/mumphery-lawsuit-michigan-settlement.html.

to properly defend himself, John would not have been removed from the team. Because courts recognize that losing a year of competition will irreparably harm an athlete, John is entitled to injunctive relief.

### 3. *Irreparable injury is presumed when constitutional rights are impaired.*

Lastly, John is entitled to a presumption of irreparable harm. "Courts have recognized that '[w]hen constitutional rights are being threatened or impaired, irreparable injury is presumed.'" *Doe v. Rector & Visitors*, No. 3:19CV00038, 2019 U.S. Dist. LEXIS 108990 at *18 (W.D. Va. June 28, 2019) (*citing Doe v. Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017); *see also Stinnie v. Holcomb*, 355 F. Supp. 3d 514, 532 (W.D. Va. 2018) ("[W]here Plaintiff's constitutional rights are being violated, there is a presumption of irreparable harm.'" (*citing David v. District of Columbia*, 158 F.3d 1342, 1343 (4th Cir. 1998)).

LSU violated John's Fourteenth Amendment right to due process, denying him both adequate notice and an opportunity to be heard. The "notice" John received lacked basic information to inform him of the charges against him. With grossly insufficient notice, John's "opportunity to be heard" morphed into a mere formality that LSU could point to as compliance. In reality, LSU's refusal to provide sufficient information meant that John could not have fully prepared for the February 19th meeting. Moreover, a true opportunity for John to defend himself by way of a UHP has been denied. For these reasons, John is entitled to a presumption of irreparable injury.

## II.     CONCLUSION

John respectfully requests that this Court grant his Motion and order injunctive relief, staying John's suspension pending the outcome of a UHP. The Proclamation clearly applied to the Board, the state-created entity responsible for overseeing John's disciplinary process. Mr. Galligan

has emphasized LSU's need to comply with the very same Proclamation. Without injunctive relief, John will unquestionably suffer irreparable injury in the form of a permanent gap on his record and the unshakeable stigma associated with a sexual misconduct finding. Even absent the above considerations, John is entitled to a presumption of irreparable harm given LSU's denial of his constitutional rights. In light of the foregoing, John respectfully requests that his Motion be granted.

Respectfully Submitted,

*/s/ Kristina W. Supler*
Susan C. Stone (*pro hac vice*)
Kristina W. Supler (*pro hac vice*)
Kohrman Jackson & Krantz, LLP
1375 E. 9th Street, 29th Floor
Cleveland, OH 44114
P: (216) 696-8700
F: (216) 621-6536
E: scs@kjk.com; kws@kjk.com

John S. McLindon
Brant M. Mayer
12345 Perkins Road, Building 2-Suite 202
Baton Rouge, LA 70810
P: (225) 408-0362
F: (877) 241-2631
E: mclindon@lawbr.net; mayer@lawbr.net

*Counsel for Plaintiff John Doe*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Plaintiff's Post-Hearing Brief was filed electronically on this 7th day of July, 2020. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Kristina W. Supler*
Kristina W. Supler